**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**

       Plaintiff,

       v.                        **No. 21-CR-0665 MV**

**MICHAEL THEODORE ORTEGA,**

       Defendant.

## DEFENDANT MICHAEL T. ORTEGA'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS DERIVED AS A RESULT OF AN INVALID SEIZURE AND SEARCH AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW, the Defendant Michael T. Ortega by and through his counsel of record, Erlinda O. Johnson, pursuant to Federal Rules of Criminal Procedure 12(b)(3), respectfully moves this court for an Order suppressing all evidence derived from the illegal seizure and search of his vehicle, by the New Mexico State Police ("NMSP"). In support thereof, Mr. Ortega submits the following.

## INTRODUCTION

This case is one in which law enforcement breached Mr. Ortega's Fourth Amendment protections intended to shield him against government intrusion through unreasonable seizures and searches. As such, the evidence derived from the illegal seizure and search of Mr. Ortega's truck must be suppressed. *See United States v. Leon*, 468 U.S. 897, 906 (1984) (establishing the exclusionary rule).

Mr. Ortega makes four arguments supporting his contention that the evidence derived from the seizure and search of his truck was in violation of Mr. Ortega's Fourth Amendment protections against unreasonable searches and seizures: (1) NMSP Officer Andrew Pulido lacked reasonable suspicion to stop Mr. Ortega's vehicle; (2) the warrantless search of the truck was unreasonable; (3) the

impoundment of Mr. Ortega's truck was unreasonable and therefore the subsequent alleged inventory search was unlawful; (4) even if the impoundment was reasonable, the subsequent inventory search was not reasonable as it was done as a ruse for a search for evidence, and therefore all the evidence derived therefrom must be suppressed.

As a result of these failures by law enforcement to properly ensure execution of their duties without violating Mr. Ortega's Fourth Amendment protection from unreasonable searches and seizures, Mr. Ortega argues that any evidence seized as a result of the illegal seizure and search of his truck must be suppressed in a trial of the above-captioned case pursuant the exclusionary rule.

## **PROCEDURAL BACKGROUND**

1.      On April 8, 2021, Mr. Ortega was arrested after NMSP Officer Pulido pulled Mr. Ortega over and confirmed there was an outstanding misdemeanor arrest warrant for him. Mr. Ortega was subsequently also booked on drug charges resulting from a search of his truck during which contraband was discovered. Mr. Ortega was initially charged in the First Judicial District Court in Santa Fe, N.M.

2.      On May 24, 2021, Mr. Ortega was arrested pursuant to an indictment issued by a federal grand jury sitting in the District of New Mexico, wherein he was charged with possession with intent to distribute methamphetamine, heroin, and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) & (C) and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The charges stem from the traffic stop of Mr. Ortega's vehicle conducted by Officer Pulido on April 8, 2021, and the subsequent seizure and search of the truck which resulted in the seizure of a firearm and contraband.

3.      On June 1, 2021, Mr. Ortega was ordered released to the third-party custody of the La Pasada Halfway House.

4.     On July 15, 2021, Mr. Ortega was remanded back into custody for alleged violations of pretrial release in that he allegedly violated halfway house rules.

5.     On December 20, 2021, Mr. Ortega, through counsel, filed a motion for release. That motion was ultimately denied by U.S. Magistrate Judge Jerry Ritter, on January 13, 2022, noting that an acceptable release option had not been presented to the Court.

6.     During the pendency of the case, former defense counsel for Mr. Ortega did not file any pretrial motions on behalf of Mr. Ortega.

7.     On March 28, 2022, Mr. Ortega proceeded to trial, represented by former counsel. On March 31, 2022, the Court declared a mistrial as the jury was unable to reach a unanimous verdict.

## STATEMENT OF FACTS

8.     On April 8, 2021, NMSP Officer Andrew Pulido was on duty patrolling in Santa Fe, New Mexico near the intersection of Cerrillos Road and Jaguar Road.

9.     At approximately 8:20 p.m., Officer Pulido observed a maroon pickup truck driving on Cerrillos Road, some distance in front of Officer Pulido. According to Officer Pulido, he queried the license plate of the pickup truck.

10.     While Officer Pulido represented that he pulled over the truck once he confirmed the registered owner of the truck had an outstanding arrest warrant, the video of the stop shows that Officer Pulido initiated his emergency equipment before he received confirmation from dispatch regarding the ownership of the truck.

11.     While there was an outstanding arrest warrant for Michael Ortega from Valencia County Magistrate Court, the warrant described Mr. Ortega as 5 feet 9 inches tall, 260 pounds with brown hair.

11.     The driver of the maroon pickup truck was bald and his height and weight were not apparent from Officer Pulido's vantage point.

12.     Nevertheless, Officer Pulido initiated a traffic stop. After Officer Pulido initiated his emergency equipment, the pickup truck eventually pulled into a private driveway belonging to a local business.

13.     While Officer Pulido approached the driver's side of the truck, a second officer approached on the passenger side of the truck.

14.     While Officer Pulido made contact with the driver, later identified as Michael T. Ortega, the second officer was flashing his flashlight into the truck towards the passenger side floorboard, in an apparent attempt to look for evidence.

15.     Within 20 seconds of the approach by the initial officers, a third officer approached.

16.     Shortly after the arrival of the third police officer, he began to shine his flashlight into the truck in what appears to be an attempt to search for evidence.

17.     A couple of minutes later, a fourth officer arrived on scene, and he too began to look inside the truck.

18.     After approaching the driver and obtaining his name, Officer Pulido requested confirmation of the warrant.

19.     It was not until several minutes after the traffic stop that Officer Pulido received conformation of the arrest warrant. At which time, Officer Pulido placed Mr. Ortega in the back of Officer Pulido's patrol car.

20.     Mr. Ortega requested that he be allowed to call someone to pick up his truck so that it would not be towed. However, Officer Pulido declined.

21.     Officers almost immediately began searching the truck. At some point, Officer Pulido discovered a bag in which he represents he discovered a firearm. At that point, he proceeded to go speak with Mr. Ortega and ask him about the weapon. The other officer continued rummaging and searching the truck.

22.     Officer Pulido returned to the pickup truck and resumed his search. At some point, he appears to have found suspected narcotics.

23.     Within ten minutes of pulling over the truck, officers called a tow truck to arrive to tow the truck.

24.     While a towing authorization form was filled out, it does not appear that an inventory was created. Yet, the truck contained numerous items of value on the back seat and the back area.

25.     Notably, while Officer Pulido was driving Mr. Ortega to the police station, he told him he found the contraband as he searched the "[f]irst place I went to see what you were stuffing and that's what I found."

26.     The truck was towed to the NMSP office. Several days later, officers executed a search warrant on the truck but the firearm and narcotics had already been seized on April 8, 2021.

## ARGUMENT

### I.     The Traffic Stop of Mr. Ortega's Truck was Unlawful

The Fourth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, establishes the foundational obligation of the State to obtain probable cause prior to initiating searches and seizures of persons and property.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. The Supreme Court of the United States has recognized that "[t]he security of one's privacy against arbitrary intrusion by the police— which is at the core of the Fourth Amendment— is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27 (1949); *see also Mapp v. Ohio*, 367 U.S. 643, 679 (1961). Central to the Fourth Amendment protection is that officers establish probable cause prior to executing a search or seizure of a person. The proper remedy for Fourth Amendment violations is exclusion of evidence obtained in a manner violative of the Amendment. *Mapp v. Ohio,* 367 U.S. 643, 671 (1961). "Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable." *Katz v. United States*, 389 U.S. 347, 357 (1962).

Ordinarily, a traffic stop is the equivalent of an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), for which reasonable suspicion is required. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An individual retains a reasonable expectation of privacy when operating a motor vehicle. An individual does not give up that expectation simply because there are regulations for drivers. *Delaware v. Prouse,* 440 U.S. 648, 662 (1979). Under *Terry v. Ohio*, a temporary investigative stop of an automobile is proper if the stop is based upon reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975); 440 U.S. at 653.

Here, at the time Officer Pulido conducted a traffic stop of the maroon truck on April 8, 2021, Officer Pulido had not received confirmation of the arrest warrant possibly outstanding for the truck's registered owner. Nevertheless, even if Officer Pulido was aware there was an outstanding warrant for the registered owner of the truck, he did not know the driver on April 8, 2021, was in fact Michael Ortega.

Indeed, a law enforcement officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch"' in order to justify an investigatory stop." *United States v. Sokolow*, 490 U.S. 1, 2 (1989)(*quoting Terry*, 392 U.S. at 27). While knowledge that a registered owner of a vehicle has an outstanding arrest warrant provides a sufficient basis to support a traffic stop to arrest that individual, *see United States v. Hensley*, 469 U.S. 221, 232, (1985), the officer must have reasonable suspicion that the owner is in the vehicle. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

Here, Officer Pulido did not know at the time that he stopped the maroon truck whether the owner of the vehicle had a valid warrant for his arrest and whether the driver of the truck was indeed the person who had the outstanding arrest warrant. The officer did not know because he did not bother to confirm the warrant until after he had made the stop and had pulled Mr. Ortega out of the vehicle.

However, even assuming that Officer Pulido was aware of an outstanding warrant for a "Michael Ortega" and the truck was registered to Michael T. Ortega, there was no way for the officer to know the driver of the truck on April 8, 2021, was indeed the person for whom there was an outstanding warrant. While the Supreme Court in *Kansas v. Glover*, 140 S.Ct. 1183 (2020), issued a narrow ruling that held an officer has reasonable suspicion to stop a vehicle when he "learn[s] that the registered owner has a revoked driver's license" and "lacks information negating an inference that the owner is the driver of the vehicle," *Id*. at 1186, the Court stressed the narrow scope of its holding. The majority stressed that while an officer's traffic stop must be justified at its inception, *id*. (*quoting Hiibel v. Sixth Jud. Dist. Ct*., 542 U.S. 177, 185 (2004)), when taking into account the totality of the circumstances, the presence of

7

additional facts might dispel reasonable suspicion. *Id*. at 1191(*citing Terry v. Ohio,* 392 U.S. 1, 28 (1968)).

In this case, there were additional facts that dispelled reasonable suspicion to pull over the maroon truck. For example, the warrant described the person for whom the warrant was issued as having brown hair but the driver was observed to be bald. That is an additional fact that dispelled reasonable suspicion. Accordingly, Officer Pulido lacked reasonable suspicion to conduct the traffic stop.

## II.    The Warrantless Search of the Truck Was Unreasonable.

Warrantless searches are *per se* unreasonable under the Fourth Amendment unless they fall within a recognized exception to the search warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (*citing Katz v. United States,* 389 U.S. 347 (1967)); *see Schneckloth v. Bustamonte*, 412 U.S. 218. 219 (1973) ("It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well delineated exceptions.'" (*also citing Katz*, 389 U.S. 347)). There are a few identified exceptions to the Fourth Amendment search warrant requirement to search a vehicle. Some of those exceptions include a law enforcement search of a vehicle without a warrant if they have established probable cause to support the search, *Carroll v. United States*, 267 US 132 (1925), or if they have obtained valid consent to search the vehicle. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  Evidence seized as a result of an illegal search and seizure, and thus in violation of the Fourth Amendment protection against unreasonable searches and seizures, may not be used by the prosecution in a criminal trial. *Mapp v. Ohio*, 367 U.S. 643 (1961).

In this case, a search of the truck was executed immediately after Mr. Ortega was placed under arrest for a warrant. This search breached Mr. Ortega's reasonable expectation of privacy within the truck, *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), as it was conducted without a warrant, lawful consent or probable cause. Accordingly, all evidence seized as a result of the unlawful search must be suppressed.

### A.  The Warrantless Search of The Truck Was Unreasonable Because the Officers did Not Have Probable Cause to Search the Truck.

Officers had no probable cause to search the truck for evidence of a crime. First, the Supreme Court's decision in *Arizona v. Gant* established that a search of a vehicle for evidence of a traffic violation is unjustified, because it is inherently unreasonable to believe the truck could contain evidence of a traffic stop for a traffic violation. *Arizona v. Gant*, 556 U.S. 332 (2009).   In light of *Gant*, a lawful search of the truck must have been supported by probable cause that a crime other than a traffic violation had been or was being committed. Neither Officer Pulido nor any of the other officers on scene, had probable cause to search the vehicle.

A warrantless search must be supported by probable cause or fall within a recognized exception to the warrant requirement. "Probable cause to search a vehicle is established if, under the *totality of the circumstances* there is a fair probability that the car contains contraband or evidence of a crime. Probable cause is measured against an objective standard; hence, the subjective belief of an individual officer as to whether there is probable cause ... is not dispositive.  In determining whether probable cause exists, an officer may draw inferences based on his own experience." *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004) (internal quotations, brackets, and citations omitted) (emphasis in original).

At the time the officer initiated the search of the truck and seized the bag from underneath the seat, the searching officer possessed *no information of criminal activity, beyond the*

*misdemeanor arrest warrant for Mr. Ortega, and no facts that would support an inference of any criminal activity connected to the truck.* As noted above, when officers searched Mr. Ortega's truck there was no probable cause to search the truck. The totality of the circumstances establishes that no fair probability existed that the truck contained "contraband or evidence" of criminal activity. *Jurado-Vallejo*, 380 F.3d at 1238 (10th Cir. 2004).

> **B.    The Impoundment of Mr. Ortega's Truck was Pretextual and Therefore the Search Conducted Pursuant to its Impoundment was Unlawful**

As previously noted, "[s]earches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Among the well-defined exceptions to the warrant requirement is an inventory search. *Colorado v. Bertine*, 479 U.S. 367 (1987). However, before reaching the issue of whether a search can be properly characterized as a proper inventory search, the Court must examine whether the vehicle's impoundment is proper in the first place. *United States v. Woodard*, 5 F.4th 1148 (10th Cir. 2021).

The Supreme Court has acknowledged that police authority to impound a car is susceptible to abuse. *Florida v. Wells*, 495 U.S. 1, 5 (1990). The United States bears the burden of proving that the impoundment of a vehicle and any subsequent inventory search of that vehicle is reasonable under the Fourth Amendment. *United States v. Sanders*, 796 F.3d 1241, 1244 (10th Cir. 2015); *United States v. Taylor*, 592 F.3d 1104, 1107 (10th Cir. 2010). "[I]mpoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a

standardized policy and a reasonable, non-pretextual community-caretaking rationale." *United States v. Sanders*, 796 F.3d at 1248.

The Tenth Circuit recently addressed the issue of police use of impoundment as a pretext to search a vehicle. *United States v. Woodard*, 5 F.4th 1148 (10th Cir. 2021). In *Woodard*, the Tenth Circuit reversed the denial of a motion to suppress evidence finding that the impoundment of Mr. Woodard's vehicle was used as a pretext to search for evidence of a crime. 5 F.4th at 1158-1159. The Court held that the police relied on their department's policy on impoundment as a pretext to search the vehicle rather than acting to safeguard the car or its contents. *See id*. at 1155. The Court listed five impoundment pretext factors a court must examine in determining whether an impoundment was pretextual and thus any subsequent search unlawful.

1. Whether the car is on private or public property
2. Whether the property owner has been consulted
3. Whether an alternative to impoundment exists (especially the availability of someone else to drive the car)
4. Whether the car is implicated in a crime
5. Whether the driver or owner has consented to the impoundment
 *Sanders*, 796 F.3d at 1250.

*Woodard*, 5 F.4th at 1155 (citing *United States v. Sanders*, 796 F.3d 1241, 1250 (10th Cir. 2015)). The government bears the burden of proving that its impoundment of a vehicle satisfies the Fourth Amendment. *Sanders*, 796 F.3d at 1244 (*citing United States v. Ibarra*, 955 F.2d 1405, 1409) (10th Cir.1992). The standardized criteria may not permit impoundment in all situations without consideration of alternatives to impoundment and tow. *Sanders*, 796 F.3d at 1249-50.

Here, Officer Pulido used the state police policy on impoundment as a pretext to search the truck for evidence of a crime. The NMSP policy on impoundment states,

Officers have the option ***not*** to impound a vehicle when there is a reasonable alternative.

1. This includes the release of the vehicle to a responsible third party who can

arrive on scene in a reasonable amount of time as determined by the officer requesting the vehicle be towed.

(exhibit A- N.M.D.P.S. Policy Manual, OPR: 36(R-2). The policy also mandates,

### D. General Guidelines

1. ___No vehicle shall be towed___ unless there is a legitimate public safety justification for the vehicle's removal from its location.

2. Under no circumstance will the authority to tow vehicles be used as a punishment of the driver, owner or any member of the public associated with a vehicle being removed.

(exhibit A at 2). Officer Pulido had reasonable alternatives to towing the vehicle as Mr. Ortega's sister was available to arrive on scene to take the truck as requested by Mr. Ortega. However, Officer Pulido denied his request to call his sister to pick up the truck. It is clear from the video recording that the impoundment was done as an excuse to conduct an investigatory search of the truck under the guise of an inventory search. Officer Pulido's decision to tow the vehicle did not have any legitimate public safety purpose as the officer had other more reasonable options.

Evidence that the impoundment was simply a pretext to conduct a search for evidence is also apparent from the fact that the officers began a visual search of the truck immediately upon conducting the traffic stop. Those visual searches can be seen on the video of the traffic stop. When Officer Pulido began what he termed an inventory search, he went immediately to the area underneath the driver's seat as he was intent on recovering what he believed had been concealed by the driver. That clearly shows the officer's search was investigatory in nature. It is clear that the searching officers were not conducting an inventory of the vehicle but rather were conducting a search for evidence. It should be noted that officers failed to document several items of value that were left in the truck and not noted in the inventory form printed when the tow truck driver arrived on scene. Indeed, the five impoundment pretext factors identified by the Tenth Circuit are

present in this case. This case is similar to the Tenth Circuit's decision in *United States v. Sanders*, 796 F.3d at 1250, and that standardized criteria did not guide Officer Pulido's decision to tow Mr. Ortega's truck.

First, Mr. Ortega's truck was on private property as it was on the driveway area of a business. The vehicle was on private property and there is no evidence it posed a risk to public safety or was impeding traffic. 796 F.3d at 1250. Second, the owner of the private property was not consulted about the impoundment. As held in *Sanders*, "impoundment was impermissible because the officers were not guided by standardized criteria." *United States v. Sanders*, 796 F.3d at 1250.

Third, while the officer discussed the impoundment with Mr. Ortega, the officer refused to allow the designated third party to pick up the truck. Instead, the officer advised Mr. Ortega he was towing the truck. Those actions militate in favor of a finding of pretext. As to the third factor, Officer Pulido had a clear and viable alternative to impoundment. The truck could have been released to Mr. Ortega's sister as requested.

Factors four and five solidify a conclusion in favor of pretext as the truck was not implicated in a crime and neither the owner/driver consented to the impoundment. Given the fact that all five *Sanders* factors are present here, the only logical legal conclusion the Court can reach is that Officer Pulido's impoundment of the truck was pretextual and all the evidence seized therefrom must be suppressed. *See Woodard*, F.4th at 1159.

### III.     Even if the Court Finds Impoundment was Proper, the Inventory Search Was Unlawful and all Evidence Seized therefrom Must be Suppressed.

While the Fourth Amendment typically requires a warrant to conduct a search, vehicle inventory searches pursuant to impoundment are an "exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *accord United States v.*

*Blaze*, 143 F.3d 585, 593 (10th Cir. 1998). However, law enforcement may conduct an inventory

search without a warrant only if they "exercise that discretion according to standardized criteria,

and not in bad faith or for the sole purpose of investigation." *Sanders*, 796 F.3d at 1245 (*quoting*

*United States v. Taylor,* 592 F.3d 1104, 1108 (10th Cir. 2010)); *see also United States v. Tueller*,

349 F.3d 1239, 1243 (10th Cir. 2003) ("an inventory search must be justified by the

administrative purposes of such searches").

An "inventory search must not be a ruse for a general rummaging in order to discover

incriminating evidence." *United States v. Martinez*, 512 1268, 1274 (10th Cir. 2008) (*citing*

*Florida v. Wells*, 495 U.S. 1, 4 (1990)). Although inventory searches are an exception to the

general warrant requirement, they are restricted in scope and purpose. First, they "are reasonable

only if conducted according to standardized procedures." *United States v. Haro-Salcedo*, 107

F.3d 769, 772 (10th Cir. 1997). Second, "[t]he policy or practice governing inventory searches

should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Third, "[t]o

be justified as an inventory search . . . the search cannot be investigatory in nature but must

instead be used as a tool to record the defendant's belongings to protect the police from potential

liability." *United States v. Edwards*, 632 F.3d 633, 644 (2001). That is, the search "must not be a

ruse for a general rummaging in order to discover incriminating evidence." *Unites States v.*

*Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997). A guiding principle is that only "inventory

procedures administered in good faith satisfy the Fourth Amendment." *United States v. Taylor*,

592 F.3d 1104, 1108 (10th Cir. 2010) (quotation marks omitted).

In this case, it is evident from the police camera video of the search of Mr. Ortega's truck

that the "inventory search" was clearly a "ruse for a general rummaging in order to discover

incriminating evidence." *Haro-Salcedo*, 107 F.3d at 773. The search of the truck was

unreasonable because the NMSP officers failed to comply with their own written inventory

policy. The NMSP policy on inventories requires officers to,

> [l]ist all personal property in as much detail as is reasonably possible
> under the circumstances.
> > a. Individually list all property on or in the
> > vehicle that has an apparent value of at least $25.00 per item.

(Exhibit A at 4).

> In every instance, the officer shall complete the towing authorization form and
> have the appropriate parties sign the form, if possible.

(Exhibit A at 2).

Here, the officers failed to prepare a complete inventory of the contents of the vehicle

listing all personal property in as much detail as is reasonably possible. (*Id.* at 4), thus calling into

question the motive for the search. Also, the search began visually almost immediately upon

pulling over Mr. Ortega. Then, after Mr. Ortega was arrested for the warrant, Officer Pulido went

directly to search under the driver's seat and by his own admission, that was the first place he went

because he wanted to see what Mr. Ortega was allegedly stuffing. Importantly, although Officer

Pulido called his search an inventory search, neither he nor the other officer was making notation

of any of the items in the truck. Based on the specific facts of this case, the purported inventory

search was unreasonable.

The reasonableness of an inventory search is inextricably connected to the procedure

followed. As will be demonstrated at a hearing on Defendant's Motion to Suppress, the inventory

produced in this case hardly qualifies as adequate as it fails to list all the items found in the truck.

*United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011). The inventory form did not contain a

detailed list of the items that were in the truck. Indeed, as evident on police camera footage,

officers were clearly conducting a search for evidence and not an inventory search. Failing to

make a detailed record of all the property within the vehicle, law enforcement fail to follow its own procedures and thus the search is not conducted to standardized police procedures. *See South Dakota v. Opperman*, 428 U.S. 364, 376 (1976).

Additionally, given the officers' actions as seen on the police camera, in this case, their motivation was something other than to produce an administrative inventory.  The Court may consider the officers' motivations for conducting a search when the justification is an inventory or administrative search which is absent probable cause. *Whren v. United States*, 517 U.S. 806, 812 (1996). Accordingly, the purported inventory search here was a pretext to rummage through the truck in search of incriminating evidence. Accordingly, all evidence seized therefrom must be suppressed.

Given the fact that this motion raises contested issues of fact going to the validity of the search in issue, the court must hold an evidentiary hearing in order to determine whether officers utilized their policies on towing and inventory searches as a pretext for a search for incriminating evidence. *See United States v. Glass,* 128 F.3d 1398, 1408–09 (10th Cir.1997) (quoting *United States v. Walczak,* 783 F .2d 852, 856 (9th Cir.1986)).

### IV.     Statements Made by Mr. Ortega After he was Arrested Must be Suppressed as Officers Violated his Rights Pursuant to *Mirandize v. Arizona*

The Fifth Amendment to the United States Constitution assures that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.; *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). Under *Miranda v. Arizona,* law enforcement officers must advise a suspect who is subjected to custodial interrogation that he has the right to remain silent, that statements can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. 384 U.S. 436, 467–73 (1966). "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or

otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 446. To determine whether or not a person is in "custody" under *Miranda*, "a court must examine all relevant facts, the only inquiry being how a reasonable person in the suspect's position would have understood his situation." *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993). If, from an objective viewpoint, the detainee would reasonably believe freedom of action had been curtailed to a "degree associated with formal arrest[,]" then "custody" exists. *Id.* (internal quotation marks and citation omitted).

Once a defendant presents some evidence that a custodial interrogation occurred, the burden shifts to the government to prove a knowing and intelligent waiver by a preponderance of the evidence. *See United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir. 1975). Interrogation, "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

In this case, Mr. Ortega was in custody the moment he stepped out of his truck and Officer Pulido essentially placed him under arrest and in handcuffs. At that point, Mr. Ortega should have been advised of his rights pursuant to *Miranda*, as the questions subsequently asked by the officers were intended to elicit incriminating responses. Accordingly, all statements made by Mr. Ortega in response to officers' questions, after he was handcuffed, must be suppressed.

### A.  All Statements Made by Mr. Ortega After he was Finally Advised of his Constitutional Rights Pursuant to *Miranda* Must also be Suppressed as he Invoked his Right to Counsel but Questioning Continued

Once a suspect is advised of his constitutional rights, all questioning must stop if the suspect requests an attorney at any time during the custodial interrogation. *See Edwards v.*

*Arizona,* 451 U.S. 477, 484–85 (1981). In fact, if a suspect invokes his right to remain silent at any point during questioning, "further interrogation must cease. *Berghuis v. Thompkins*, 560 U.S. 370, 388 (2010). The rigid prophylactic rule requiring all questioning to cease upon a suspect's invocation of his right to counsel "is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Davis v. United States*, 512 U.S. 452, 458 (1994) (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)). A suspect's right to cut off questioning must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

Here, over 21 minutes after being placed in handcuffs and in custody, Mr. Ortega was finally advised of his rights pursuant to *Miranda*. Upon the advisement, Officer Pulido asked Mr. Ortega if he wished to waive his rights. Mr. Ortega advised the officer that he did not wish to waive his rights and invoked his right to counsel. All questioning should have ceased at that point. However, intermittent questioning of Mr. Ortega continued. All statements made by Mr. Ortega must be suppressed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Mr. Ortega urges the Court to suppress the evidence seized as a result of law enforcement's unlawful seizure and search of his vehicle and to suppress all statements made in violation of Mr. Ortega's rights pursuant to *Miranda v. Arizona*.

Respectfully submitted,

By: *electronically filed 6/9/22*
    Erlinda O. Johnson
    Attorney for Michael T. Ortega
    620 Roma Ave NW
    Albuquerque, NM 87102
    (505) 792-4048

I hereby certify that a true and correct
Copy of the foregoing was provided
To counsel for the government, via CM/ECF
This 9th day of  June 2022.

_____/s/_____
Erlinda O. Johnson
Attorney at Law