UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                             No. 21-CR-665 MV

MICHAEL THEODORE ORTEGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Michael Theodore Ortega's Motion to Suppress Cell Phone Evidence ("Motion") [Dkts. 145, 170]. The government filed a response in opposition [Dkt. 161]. The Court, having carefully considered the briefs, evidence, and relevant law, and being otherwise fully informed, **DENIES** Mr. Ortega's Motion.

## BACKGROUND

Law enforcement stopped and arrested Mr. Ortega on an outstanding state warrant on April 8, 2021.[1] During a subsequent inventory search, officers observed three cellular telephones in Mr. Ortega's vehicle: one on the driver's floorboard and two on the passenger side of the truck's cabin. Under the driver's seat, inches away from one of the cellular telephones, an officer found a black bag containing a pistol and methamphetamine. Upon discovery of the firearm and drugs, officers sealed Mr. Ortega's truck to obtain a search warrant.

On April 28, 2021, officers executed a search of Mr. Ortega's truck pursuant to a federal warrant received a day earlier. The search produced the three cellular telephones previously mentioned, a scale, and suboxone packaging. On May 24, 2021, Mr. Ortega was arrested at home

---

[1] For a complete rendition of the traffic stop, *see* Dkt. 178 at 1–5.

following indictment in the instant case, at which point law enforcement seized, among other items, a fourth cellular telephone. These four phones became the subject of a federal search warrant, Case No. MR-22-0035, on January 7, 2022. The Drug Enforcement Administration attempted extractions using Cellbrite, but the locking mechanisms on the phones required a more involved and time-consuming process. Law enforcement eventually provided Mr. Ortega with full phone extractions on January 27, 2022. In the instant Motion, Mr. Ortega seeks suppression of these extractions—*i.e.*, the data contained in his cellular telephones.

## DISCUSSION

Mr. Ortega argues that the search and extraction of data from the cellphones violated his Fourth Amendment protections, requiring suppression. Specifically, he asserts that: (1) the search warrant for the telephones seized lacked probable cause; (2) the search warrant was insufficiently particular as to the cellular telephones seized; (3) the search of the telephone exceeded the scope of the search warrant; (4) the nine-month delay in obtaining and executing a search warrant was unreasonable; and (5) the good faith exception to the exclusionary rule does not apply. Dkt. 145 at 1–2. Each argument fails. Accordingly, the Court will deny his Motion.

**A.  The search warrant contained an adequate showing of probable cause.**

Mr. Ortega argues that the search warrant in question lacked probable cause. Not so. "A search warrant can issue only upon a showing of probable cause." *United States v. Long*, 774 F.3d. 653, 658 (10th Cir. 2014) (citing *United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009)); U.S. Const. amend. IV. "In dealing with probable cause, . . . as the very name implies, [the court] deal[s] with probabilities" that are not technical but rather the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176

(1949)). To satisfy the probable-cause standard, law enforcement must demonstrate that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (internal quotation marks and citation omitted). A "fair probability" is not an airtight guarantee; nor is it "proof that something is more likely true than false." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014). Rather, a "fair probability," if placed on a hierarchy, ranks somewhere between a naked suspicion and a preponderance of the evidence. *Id.* (explaining that probable cause is "more than a 'bare suspicion' but less than a preponderance of the evidence" (quoting *United States v. Ludwig*, 641 F.3d 1243, 1252 n.5 (10th Cir. 2011))). This standard is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

This bar has been crossed here. The warrant in question clearly demonstrated a "fair probability" that evidence of crimes would be found in Mr. Ortega's cellular telephones. *Denson*, F.3d at 1217. In fact, the probable cause statement contained in the warrant affidavit, Dkt. 145-1 at 4–6, makes law enforcement's reasoning crystal clear. Specifically, the affidavit noted the following:

- On the night of his arrest on a state warrant, law enforcement recovered methamphetamine, heroin, fentanyl pills, and a firearm from Mr. Ortega's truck along with approximately $2,700 from his person. *Id*. at 4–5.
- Later, officers recovered one blue scale, numerous empty Suboxone strips, and three cellular phones from Mr. Ortega's truck. *Id*. at 5.
- When he was subsequently arrested on a federal warrant in his home, law enforcement found fentanyl, methamphetamine, paperwork describing how to make methamphetamine, a loaded shotgun, a rifle, ammunition, and an additional cellular

phone. *Id*.

Based on these facts, Special Agent Traci Baca believed that the four telephones contained "evidence of the possession and trafficking of controlled substances by [Mr.] Ortega." *Id*. at 6. More specifically, Agent Baca believed that the telephone could include:

> lists of customers and related information; any information related to sources of supply for narcotics (including names, addresses, phone numbers, or any other identifying information); all bank records, checks, credit card bills, account information, and other financial records; and any information related to the possession or use of a firearm in association with or in furtherance of drug trafficking.

*Id*. Given the factual circumstances surrounding Mr. Ortega's arrests, and through her training and experience, Agent Baca's belief in this case was demonstrably greater than a bare, or naked, suspicion. Specifically, the drugs and drug paraphernalia located in his car and home established probable cause that Mr. Ortega's multiple cell phones would contain evidence that he possessed and trafficked controlled substances. The probable-cause standard has, therefore, been satisfied.

**B. The search warrant was sufficiently particular and the search itself did not exceed its scope.**

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In other words, the Fourth Amendment requires warrants to be supported by probable cause *and* to describe with particularity who and what can be searched and seized. After obtaining a warrant, the Fourth Amendment also requires officers to conduct the search and seizure reasonably. Here, Mr. Ortega argues that neither the warrant nor the subsequent search satisfied these constitutional requirements.

4

### 1. Warrant Particularity Requirement

Mr. Ortega contends that the warrant was not constitutionally valid because it "failed to demonstrate the basis for justifying the search of all the cellular telephones for the broad categories of items listed." Dkt. 145 at 12. Indeed, the Fourth Amendment's particularity requirement "ensures that the search will be carefully tailored to its justifications[ ] and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Otero*, 563 F.3d 1127, 1131–32 (10th Cir. 2009) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). Because computers can contain enormous amounts of information and relevant evidence can be stored in any location within them, the Fourth Amendment requires warrants for computer searches to "affirmatively limit the search to evidence of *specific . . . crimes* or specific types of material." *Id*. at 1132 (quotation marks omitted) (emphasis added). The same standard applies to cell phones because they are essentially "minicomputers that also happen to have the capacity to be used as a telephone." *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

The guiding purpose of this standard is to establish practical guidelines about what can be searched and seized, leaving nothing to the discretion of the officers executing the warrant. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) ("A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." (quotation marks omitted)). Thus, "practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched." *Otero*, 563 F.3d at 1132 (quotation marks omitted).

The warrant in Mr. Ortega's case was affirmatively limited to a search for evidence of two specific federal crimes. Specifically, it stated that the information to be searched and seized

included all records on the cellular telephones "that relate to violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c)." Dkt. 145-1 at 14. Those included:

    a.    Lists of customers and related identifying information;

    b.    Types, amounts, and prices of drugs trafficked, as wells as dates, places, and amounts of specific transactions;

    c.    Any information related to sources or purchasers of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.    Any information recording ORTEGA's schedule or travel;

    e.    All bank records, checks, credit card bills, account information, and other financial records; and

    f.    Any information related to the possession or use of a firearm in association with or in furtherance of drug trafficking.

*Id*. Such a broad authorization is permissible under Tenth Circuit precedent, so long as the warrant contains some "limiting principle." *Russian*, 848 F.3d at 1245. Here, the limiting principle is that officers were only permitted to search and seize evidence relating to the two federal drug and firearm offenses charged. *See also United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013) (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005)) ("warrants may pass the particularity test if they limit their scope either 'to evidence of specific federal crimes or to specific types of material.'"). Accordingly, the search of these cellular telephones was not a fishing expedition in search of any and all criminal conduct committed by Mr. Ortega.

Regardless, to be sufficiently particular, search warrants need not even identify specific statutes for the crimes to which they are limited. *See Christie*, 717 F.3d at 1165 (holding a warrant was particular when it was limited to information "'related to the murder, neglect, and abuse of'" a child); *United States v. Brooks*, 427 F.3d 1246, 1252–53 (10th Cir. 2005) (holding a

6

warrant satisfied the particularity requirement when it authorized officers to search a computer "for evidence of child pornography"). Mr. Ortega's requests—that the warrant identify a timeframe and which specific phones were used for what criminal activity—would inject the kind of technical precision the Fourth Amendment does not require. *Christie*, 717 F.3d at 1166 (explaining the particularity requirement has never "been understood to demand of a warrant technical precision or elaborate detail but only practical limitations affording reasonable specificity" (internal quotation marks omitted)). Therefore, the warrant's limitation to evidence of violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c) satisfied the Fourth Amendment's particularity requirement.

### 2. Reasonableness of the Search and Seizure

After obtaining a warrant, law enforcement officers "must conduct their search 'strictly within the bounds set by the warrant.'" *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 n.7 (1971)). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *Id*. In general, "investigators executing a warrant can look anywhere where evidence described in the warrant might conceivably be located." *Id*. (citing *United States v. Ross*, 456 U.S. 798, 824 (1982)). However, that limitation can be difficult to enforce in a computer search where relevant data could be stored anywhere. *See id*.

To address this problem, the Tenth Circuit has focused on *how* the computer search was conducted rather than *what* was searched. *See id.* at 917. As the Tenth Circuit has explained, "[s]hifting our focus in this way is necessary in the electronic search context because search warrants typically contain few—if any—restrictions on where *within a computer* or other

electronic storage device the government is permitted to search." *Id*. (emphasis in original). The reasonableness of the search method "depends on the particular facts of a given case." *Id*. at 920.

Mr. Ortega argues that the extraction of information from his cell phone was too broad. Dkt. 145 at 16. He claims that the warrant only authorized a search for the specific items listed in Attachment B of the Affidavit, and not a "full and complete download of all the information stored in Mr. Ortega's cell phones." *Id*. at 17. By downloading everything, Mr. Ortega claims that the warrant was turned into a "general search warrant." *Id*. at 18. He is mistaken.

The Tenth Circuit has previously found a similar extraction and search reasonable. In *United States v. Burgess*, officers obtained a warrant to search an individual's property for evidence of controlled substances. 576 F.3d 1078, 1083 (10th Cir. 2009). At the property, they found a hard drive, which they searched by "ma[king] a byte-for-byte copy." *Id*. at 1084. Although this process captured information beyond the scope of the warrant, the Tenth Circuit did not find the search unreasonable. *Id*. at 1095. Rather, it explained that the broad extraction was consistent with the reality that evidence of the crime could be found in various file types. *Id*. at 1093. The search of the extracted files then proceeded with the focus on files that might contain evidence of drug trafficking. *Id*. at 1094–95. The officers viewed files even if they were not obviously labeled with titles related to the suspected crime to confirm they had not been deceptively labeled, but if the file did not contain relevant evidence, the officers moved on immediately. *Id*. at 1094–95. In *Burgess*, the court concluded that the extraction and the search were reasonable. *Id*. at 1095.

The Court reaches the same conclusion here. As in *Burgess*, the evidence of drug trafficking in this case could have taken many forms, such as text messages, emails, photographs, internet history, and transaction applications. For this reason, the warrant did not limit the search to one

type of information contained on the cell phone and the physical extraction of all the data from the cell phone was reasonable. Likewise, despite downloading the entire contents of the cellular telephones, the government here imposed a temporal restriction that limited its search to material generated with 39 days of Mr. Ortega's arrest. Dkt. 161 at 17. This included only using photographs in the telephones actually taken by the phone within that time period. *Id*. Furthermore, in discovery, the government redacted all references to Mr. Ortega engaging in uncharged criminal conduct within that 39-day period. *Id*. Because the government only paid attention to temporally restricted evidence pertinent to the two charged offense, the search methodology here was sufficiently limited. *See, e.g.*, *United States v. Palms*, 21 F.4th 689, 701 (10th Cir. 2021) (finding search methodology sufficiently limited when officer restricted his search of a phone to the period of criminal activity).

Even if some evidence had been seized in this case that was beyond the scope of the warrant (Mr. Ortega has identified none), an entire search is not generally invalidated (as Mr. Ortega asks) just because some items are seized that are not specified in the warrant. *United States v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999). "[T]he general rule in determining whether there has been a violation for an overly expansive scope of a search is that only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." *United States v. Hargus,* 128 F.3d 1358, 1363 (10th Cir. 1997) (internal citation and quotation marks removed), *cert. denied,* 523 U.S. 1079 (1998). Accordingly, both the extraction and the search methodology here were reasonable.

### C. The nine-month delay in obtaining the search warrant was not unreasonable.

Next, Mr. Ortega argues that the delay of nearly nine months in obtaining and executing a search warrant was unreasonable and lacked justification, thus requiring suppression. Dkt. 145 at

18. While delays may contravene the Fourth Amendment, here, there is no violation.

The Tenth Circuit has stated that "an unreasonable delay in obtaining a search warrant can sometimes violate the Fourth Amendment." *Christie*, 717 F.3d at 1162. However, the Fourth Amendment "does not specify that search warrants contain expiration dates." *Burgess*, 576 F.3d at 1097. In addressing the timeliness of a search warrant's execution, the focus is on whether probable cause continues to support a search. *United States v. Garcia,* 707 F.3d 1190, 1194 (10th Cir. 2013). Even a substantial delay in the execution of a search warrant may be permissible when the evidence is still likely to be in the place searched. *Id.* at 1195. There is no bright-line rule regarding the time frame within which a warrant must be obtained; thus, in assessing the reasonableness of the delay a court must consider the totality of the circumstances. *Christie*, 717 F.3d at 1162.

The Court finds that the nine-month delay in obtaining and executing a search warrant on Mr. Ortega's cellular phones was not unreasonable. After officers' initial seizure of the cellphones in April and May of 2021, they remained in Drug Enforcement Administration custody, unadulterated, until officers transferred them to the Regional Computer Forensics Lab for extraction in January of 2022. Because the contents of the cellular telephones did not change during this time period, the level and extent of probable cause remained the same in June 2022 when the phones were searched as it was the day they were seized. Moreover, courts have upheld searches with even longer delays. *See, e.g., Christie*, 717 F.3d at 1167 (finding no Fourth Amendment violation when computer search was executed five months after consent was given and when a second and a more thorough search was performed three years after securing custody of the computer); *see also United States v. Gregoire*, 638 F.3d 962-68 (8th Cir. 2011) (finding no violation in one-year delay in searching a laptop after seizure). Finally, the Court notes that Mr.

10

Ortega has not identified any prejudice or harm from the delay. *Cf. United States v. Johns*, 469 U.S. 478, 487 (1985) (while police officers may not indefinitely retain possession of a vehicle and its contents before they complete a valid warrantless search, the owner of the property must prove delay in the completion of a search was unreasonable because it adversely affected a privacy or possessory interest).

For these reasons, the Court finds no reason to suppress evidence resulting from the search of Defendant's two computers based on a nine-month delay between the seizure in April/May 2021 and the search in January 2022.

### D. Mr. Ortega's argument regarding the good faith exception is moot.

Finally, Mr. Ortega argues that the good faith exception to the exclusionary rule does not apply in this case. Dkt. 145 at 21. Because his Motion fails on the merits, this argument is moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Ortega's Motion to Suppress Cell Phone Evidence [Dkts. 145, 170] is **DENIED**, consistent with this Memorandum Opinion and Order.

ENTERED this 30th day of March 2023.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE